RECEIPT NUMBER

535536

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD WILTSIE,

            Plaintiff,

vs.

COGNEX CORPORATION, a
Massachusetts corporation,

            Defendant.

```
JUDGE : Borman, Paul D.
DECK  : S. Division Civil Deck
DATE  : 12/14/2005 @ 14:23:28
CASE NUMBER : 2:05CV74746
CMP RICHARD WILSTIE V. COGNEX
TAM
```

_____/

PITT, DOWTY, McGEHEE, MIRER & PALMER, P.C.
MICHAEL L. PITT P-24428
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800

_____/

## COMPLAINT AND JURY DEMAND

### I. PARTIES, VENUE AND JURISDICTION

1.     Plaintiff Richard Wiltsie ("Wiltsie") is a citizen of the State of Michigan and a resident of Oakland County, Michigan.

2.     Defendant Cognex Corporation ("Cognex" or "the Company") is incorporated in the State of Massachusetts and has its principal place of business in the State of Massachusetts.

3.     The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

1

4.     This court has diversity jurisdiction over this matter pursuant to 28 U.S. §1332.

5.     Venue is in this district is proper because all the events in controversy occurred in Oakland County, Michigan.

## STATEMENT OF FACTS

6.     Wiltsie began his employment with Cognex at its facilities located in Novi, Michigan, in February of 2003, working as the company's automotive sales manager earning a base salary of $108,000.00, plus valuable and substantial bonuses, commissions and stock options, as well as other fringe benefits including medical insurance, vacation, participation in a 401(k) plan and participation in a profit-sharing plan.

7.     In the early part of 2005, Wiltsie was informed by company employees Roxanne Maksimovic ("Maksimovic") and Rick Anderson ("Anderson") of alleged incidents of aggressive  sexual harassment involving manager Kevin O'Connor ("O'Connor")  in his dealings with Maksimovic.

8.     Wiltsie, after receiving the complaint of sexual harassment from Maksimovic and Anderson, informed his supervisor, Herb Wagner ("Wagner") of the report and requested guidance as to how the complaint should be handled.

9.     In response to Wiltsie's report, Wagner said, "you want to let this one go - you don't want to touch it".

2

10.     As soon as Wagner was informed of the complaints from Maksimovic and Anderson regarding the alleged unlawful conduct of O'Connor, O'Connor's sexual harassment of Maksimovic ceased, leading Wiltsie to the conclusion that Wagner informed O'Connor of the complaint.

11.     In September of 2005, O'Connor was promoted to the position of vice-president of North American sales.  Wagner reported to O'Connor.

12.     On September 7, 2005, Wiltsie was informed by Wagner that he would be demoted from the position of automotive sales manager to the position of DaimlerChrysler account manager.

13.     On September 13, 2005, Wagner informed Wiltsie that if he did not accept the demotion, he would be "on [Wiltsie's] ass daily", implying that Wiltsie would be subjected to a hostile work environment created by Wagner.

14.     As a result of this conversation, Wiltsie did not agree to the demotion and continued to question the motivation of O'Connor and Wagner.

15.     On September 16, 2005, Wagner informed Wiltsie that he would be able to maintain his position as automotive sales manager, but that the position would be restructured so that it would be basically a marketing position.

16.     On September 20, 2005, Wiltsie informed human resource representative Patricia Bautz ("Bautz") via e-mail that he had received information from a reliable source that Wagner had inquired of the reliable source whether the reliable source was receiving

3

kickbacks from his customers  for doing business with them.  Wagner told the reliable source that this was how he did business with a prior employer.

17.     Wiltsie, in the same e-mail to Bautz, informed her of the sexual-harassment complaint made by Maksimovic and Anderson against O'Connor and informed Bautz of the retaliation that he experienced as a result of his sharing the Maksimovic and Anderson complaint with Wagner.  Wiltsie also, at this time, informed Patty Bautz of the demotion that was being forced on him by Wagner and outlined the events that had been orchestrated by Wagner and O'Connor and further advised her that he refused to accept the demotion.

18.     Wiltsie concluded that Wagner had knowledge of all his reportings to human resources.  This conclusion was based on a luncheon meeting Wiltsie had with Wagner on September 30, 2005.  During that meeting, Wagner told Wiltsie that he should leave the Company on his own accord.  The luncheon was set up upon Wagner's insistence which he used the meeting to tell Wiltsie a story about when he was with a previous employer and finally resigned.

19.     After receiving the e-mail on September 20, 2005, Bautz conducted an investigation and, in the process of doing so, informed Wagner of Wiltsie's allegations.

20.     Physical contact, such as touching, pushing and shoving were part of Wagner's management style toward Wiltsie.  During the month of October, 2005, Wagner displayed a hostile and belligerent attitude toward Wiltsie and began to systematically physically harass Wiltsie by increasing the frequency and intensity of unwanted physical

4

contact.

21.    Wiltsie demanded that Wagner cease and desist from all types of physical contact or harassment.

22.    Wiltsie had contacted Patty Bautz on at least two occasions in 2004 concerning the physical harassment by Wagner. On November 11, 2004, Wiltsie informed Patty Bautz that he had packed up his office in Novi and was working out of his home office to alleviate the problem of Wagner's physical harassment.

23.    On October 26, 2005, Wiltsie was seated in his work area when Wagner approached him from the front and placed his hands around his neck and started choking him stating that he was angry with Wiltsie because of an e-mail Wiltsie sent to a customer.

24.    On October 26, 2005, Wiltsie reported the choking incident to the Novi Police and to Bautz. Bautz expressed doubt that Wiltsie was actually injured in the assault.

25.    On October 31, 2005, Wiltsie spoke with Gessa Nigerman ("Nigerman") to file a claim for Workers' Compensation. Nigerman referred Wiltsie to Bautz. Bautz expressed doubt that Wiltsie was actually injured in the assault. She instructed Wiltsie to fly to Boston to meet with her.

26.    On November 3, 2005, plaintiff met with Bautz and Cognex attorney Michael Steir in Boston. Wiltsie was told that Wagner had engaged in "horseplay" and that he never placed his hands on Wiltsie's neck. Wiltsie disagreed with this version of the event and told Bautz and Steir that a reliable witness made a statement to the Novi Police confirming that Wagner did grab Wiltsie around the neck and started shaking him.

5

27. Wiltsie then fully informed Bautz and Steir of the sexual harassment and kickback issues which Wiltsie had raised in his September 20, 2005 e-mail to Bautz.

28. Steir downplayed the information conveyed by Wiltsie and suggested that Wiltsie "didn't want to follow direction" and had a "personality conflict" with Wagner.

29. Wiltsie informed Bautz and Steir that Wagner assaulted him in further retaliation for the issue raised in the September 20, 2005 e-mail to Bautz.

30. Steir and Bautz said "we're not asking to withdraw the police report, but it would make things easier if you dropped it".

31. At the end of the meeting, Wiltsie said he would consider dropping the police report.

32. At the conclusion of the meeting, Wiltsie was suspended from performing all duties.

33. On November 17, 2005, Wiltsie was terminated from his employment.

34. At all times during his employment with Cognex, Wiltsie performed in a highly-competent and efficient manner, developing business for Cognex and generating substantial revenue and profits for the company during his activities as the company's automotive sales manager.

35. As a direct and proximate result of Wiltsie's suspension and termination, he has suffered, and will continue to suffer, loss of income, benefits, commissions and other economic advantages of employment with Cognex; Wiltsie has suffered, and will continue to suffer, non-disabling pain and suffering, mental distress, humiliation, embarrassment,

6

loss of reputation, injury to his career, earning capacity and other consequential losses.

**COUNT I**
**(VIOLATION OF THE MICHIGAN WHISTLEBLOWER**
**PROTECTION ACT)**

36.    Wiltsie incorporates by reference all of the above allegations.

37.    Cognex was an employer within the meaning of the Michigan Whistleblower Protection Act ("WPA"). MCL 15.361(b).

38.    Under the WPA, it was unlawful for Cognex to retaliate against Wiltsie because he reported a violation of law to the Novi Police Department. MCL 15.362.

39.    In violation of this duty under the WPA, Cognex suspended Wiltsie from his duties and then terminated him in retaliation for his filing and not immediately agreeing to withdraw a report of unlawful conduct (assaultive behavior) to the Novi Police Department.

40.    Wiltsie has suffered all the injuries and damages as alleged in paragraph 35 above.

Accordingly, Wiltsie demands judgment against Cognex in an amount in excess of $75,000.00 he is found to be entitled to.

**COUNT II**
**(VIOLATION OF THE ELLIOTT-LARSEN**
**CIVIL RIGHTS ACT ("ELCRA"))**

41.    Wiltsie incorporates all the allegations contained above.

42.    Cognex was an employer within the meaning of the ELCRA. Wagner was an agent of Cognex. MCL 37.2201(a).

7

43.     Under the ELCRA, it was the duty of Cognex to refrain from retaliating against Wiltsie because he opposed O'Connor's violation of the ELCRA and brought O'Connor's unlawful conduct to the attention of management.  MCL 37.2701

44.     As a result of Wiltsie's activities protected under the ELCRA, the Company retaliated against Wiltsie when Wagner assaulted him and the Company suspended him and eventually terminated his employment.

45.     Wiltsie has suffered, and will continue to suffer, all the injuries and damages as alleged in paragraph 35 above.

Accordingly, Wiltsie demands judgment against Cognex in an amount in excess of $75,000.00 he is found to be entitled to.

### COUNT III
### (RETALIATORY DISCHARGE IN VIOLATION
### OF PUBLIC POLICY)

46.     Wiltsie incorporates by reference all the above allegations.

47.     At all times relevant to this action, it was the duty of Cognex to refrain from retaliating against Wiltsie because he refused to ignore a violation of state and federal law which prohibit kickback schemes and other unlawful business and corporate practices.

48.     As a direct and proximate result of his refusal to ignore these violations of law, Wagner assaulted Wiltsie and the Company suspended and eventually terminated Wiltsie's employment.

49.     Wiltsie has experienced all the injuries and damages as alleged in paragraph 35  above.

8

Accordingly, Wiltsie demands judgment against Cognex in an amount in excess of $75,000.00 he is found to be entitled to.

### COUNT IV
### (VIOLATION OF MICHIGAN WORKERS'
### COMPENSATION STATUTE)

50.　Wiltsie incorporates all the above allegations.

51.　Under the Michigan's Workers' Compensation Act ("WCA"), it was the duty of Cognex to refrain from discriminating against Wiltsie or retaliating against him because he pursued rights under the WCA.

52.　In violation of this duty, the Company suspended and eventually terminated Wiltsie because Bautz believed his request for benefits under the WCA in connection with the choking incident occurring on October 26, 2005 was frivolous.

53.　Wiltsie has suffered, and will continue to suffer, all the injuries and damages as alleged in paragraph 35 above.

Accordingly, Wiltsie demands judgment against Cognex in an amount in excess of $75,000.00 he is found to be entitled to.

PITT, DOWTY, McGEHEE, MIRER & PALMER, P.C.

By: _____

MICHAEL L. PITT P-24429
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800

DATED: December 14, 2005

9

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in the within cause of action.

PITT, DOWTY, McGEHEE, MIRER & PALMER, P.C.

By: _____

MICHAEL L. PITT P-24429
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800

DATED: December 14, 2005

10

## CIVIL COVER SHEET

COUNTY IN WHICH THIS ACTION AROSE:   OAKLAND COUNTY

The 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| RICHARD WILTSIE | COGNEX CORPORATION, a Massachusetts corporation |

(b) County of Residence of First Listed:   OAKLAND

County of Residence of First Listed   OAKLAND

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorneys (Name, Address and Telephone Number)

MICHAEL L. PITT P-24429
117 WEST FOURTH STREET, STE. 200
ROYAL OAK, MI 48067   (248) 398-9800

Attorneys (If Known)

## II. BASIS OF JURISDICTION     (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

|  | PLA | DEF |  | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☒ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## IV. NATURE OF SUIT     (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21: 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of Overpayment and Enforcement of Judgment | ☐ 320 Assault, Libel and Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☒ 195 Contract Product Liability | ☒ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **FEDERAL TAX SUITS** | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN     (PLACE AN "X" IN ONE BOX ONLY)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION     (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of ELCRA, MCL 37.2201(a); Violation of Michigan Whistleblower Protection Act, MCL 15.361(b)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

$ DEMAND  75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE   12/14/2005

SIGNATURE OF ATTORNEY OF RECORD

X

# PURSUANT TO LOCAL RULE 83.11

1.  Is this a case that has been previously dismissed?

☐ Yes
☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.  Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other
court, including state court? (Companion cases are matters in which
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

☐ Yes
☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :