**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICHARD WILTSIE,

        Plaintiff,

                            CASE NO: 05-CV-74746

-vs-

                            PAUL D. BORMAN

COGNEX CORPORATION,           UNITED STATES DISTRICT JUDGE

        Defendant.
_____ /

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The matter before the Court is Defendant Cognex Corporation's ("Defendant") February 14, 2008 Motion for Summary Judgment against Plaintiff Richard Wiltsie ("Plaintiff"). (Dkt. No. 56). Plaintiff filed a Response on April 4, 2008. On May 8, 2008, the parties filed a stipulation to dismiss Counts II and IV of the Complaint.[1] Therefore, only Count I of the Complaint, an alleged violation of the Michigan's Whistleblower Act, remains viable. A hearing on this matter was held on July 1, 2008. For the following reasons, the Court DENIES Defendant's motion.

**I.    BACKGROUND**

This case arises from Plaintiff's allegations that Defendant terminated his employment after he filed a police report against a co-worker, Herb Wagner ("Wagner") for assault arising from an incident occurring at his office on October 26, 2005.

Plaintiff contends that on October 26, 2005, he was assaulted by Wagner after Plaintiff sent an email at Wagner's direction. Plaintiff alleges he was sitting at his workstation speaking with co-

---

        [1]      Previously, on February 10, 2006, this Court issued a stipulated order of dismissal on Count III of the Complaint.

worker Thomas Bartoshesky ("Bartoshesky") when Wagner placed his hands around Plaintiff's neck and shook him stating, "of all the times you chose to do something I ask you to do, this time you do it quickly." (Plf. Br. at 3; Compl. ¶ 23). Plaintiff claims that he perceived Wagner as angry and Plaintiff responded to the incident by asking "what the hell he was doing." (Wiltsie Dep. 191:20, 193). It is undisputed that after the incident Plaintiff, Wagner, and Bartoshesky went into Wagner's office and continued to discuss a business issue.

Plaintiff attempted to contact Bautz on October 27, 2005, but she failed to respond because she was out of town. (Def. Br. Ex. A-12, Bautz Aff. ¶ 3). Later that day, Plaintiff filed a police report with the Novi Police Department. (Plf. Br. Ex. 9, Police Report).

Bautz began an investigation into the incident on October 27, 2005. (Bautz Aff. ¶ 5). As part of her investigation she called Wagner and asked him to describe any other similar events involving Plaintiff. (Def. Br. Ex. A-18, Wagner 10/28/05 Email) (beginning "Last night on the phone you asked me if there had been any other similar events involving Rick Wiltsie. . . .). Wagner was also informed that he would need to contact his own attorney regarding the incident. (Def. Br. Ex. A-16, Bautz 11/3/05 Memo Re: Action Taken).

On October 31, 2005, Bautz was informed by a Novi Police Detective that as of October 28, 2005, the Prosecutor's Office had determined it would not be filing any charges against Wagner. (Bautz. Aff. ¶ 5; Police Report at 6). Plaintiff states that he was not made aware that charges would not be pursued until some time after November 3, 2005. (Def. Br. Ex. L, Wiltsie Dep. at 380).

Plaintiff is a resident of Michigan. (Compl. ¶ 1). Defendant is incorporated in and has its principal place of business in the State of Massachusetts. (*Id*. ¶ 2). Plaintiff was hired by Defendant to work in its Novi, Michigan office as an automotive sales manager in February 2003. (*Id*. ¶ 6).

During the pertinent time period, Plaintiff's supervisor was Wagner. (*Id*. ¶ 8).

## A. Job Performance

Plaintiff's 2004 job performance evaluation for the previous year rated him as meeting expectations. (Plf. Mot. Ex. 1, 2004 Evaluation). Also noted on his performance evaluation was the direction for Plaintiff to "spend less time discussing personal issues with co-workers." (*Id*.).

Defendant's 2005 evaluation of Plaintiff's performance in 2004 was also satisfactory and significantly did not include any further mention of Plaintiff's previous issues with personal discussions in the work place. (Plf. Mot. Ex. 2, 2005 Evaluation).

In February 2005, Plaintiff received the "President's Award"which is awarded only to the top ten percent of Defendant's employees. (Plf. Mot., Ex. 3, Wagner's Nomination of Wiltsie, Ex. 4, Award Speech by Wagner).

Despite the previous evaluations and award, Defendant contends that Wagner believed that Plaintiff's performance was slipping in 2005 and met with him to "impress upon him the importance of improving his performance." (Def. Br. at 3). Wagner also sent Plaintiff an email outlining areas of improvement, none of which include reference to personal issues or alleged violent tendencies or history. (Def. Br. Ex. 5, 6/28/05 E-mail). It is interesting to note, the first time Patricia Bautz ("Bautz"), Defendant's vice president of corporate employee services, heard of any performance problems concerning Plaintiff was after the October 26, 2005 incident. (Bautz Dep. 126).

## B. Plaintiff's Previous Complaints to HR

It is undisputed that in 2004, Plaintiff made multiple complaints to Patrica Bautz of Cognex's Human Resource Deparabout his supervisor Wagner. (Bautz Dep. 36-50). On September 20, 2005, via email, Plaintiff complained to Bautz about Wagner's behavior, including allegations that he told

3

a coworker he should accept kickbacks, and was also trying to pressure Plaintiff into another position which Plaintiff believed would constitute a demotion. (Def. Br. Ex. A-6, 9/20/05 Email). On October 4, 2005, via email, Plaintiff reported: (1) Wagner keeps alcohol in his desk; (2) Wagner was "becoming physically abusive"; (3) believes Wagner is "bi-polar"; (4) other engineers do not want to work with Wagner; and (5) Wagner threatened employees with termination if they complained about his behavior to his supervisor. (Plf. Br. Ex. 7, Bautz 10/4/05 Notes). Plaintiff requested that Bautz take no action and keep his complaints confidential.[2] (*Id*.).

### C. Suspension

On November 3, 2005, Plaintiff attended a meeting at Cognex's headquarters in Boston with Bautz and Michael Steir, Defendant's Vice President of Corporate Legal Services. (Bautz Aff. ¶ 6). Wagner had been interviewed by Bautz and Steir prior to Plaintiff's meeting.[3]

During this meeting, Defendant contends Plaintiff admitted that he had contemplated going to Wagner's house and "confronting" him after the incident – but did not. (Def. Br., Ex. A-14, Bautz Notes 11/3/05 Wiltsie Meeting). Plaintiff also explained that he had been involved in beating a man when he was 19 years-old in the military. (*Id*.; Def. Br. Ex. A-15, Steir Notes 11/3/05 Wiltsie Meeting). Plaintiff explained that because of this incident, he made it a policy not to "physically touch anybody." (Wiltsie Dep. 395). Plaintiff also told Bautz and Steir that he did not believe he

---

[2] It is also undisputed that in the September 20, 2005 email, Plaintiff reported to Bautz that a Cognex vice-president, had sexually harassed an employee in 2004. (Compl. ¶ 16). After receiving the email, Bautz began an investigation into the sexual harassment allegations which subsequently resulted in the vice-president being reprimanded. (Bautz Dep. 57, 66). As Plaintiff is not alleging that he was terminated for reporting this behavior, the Court will not delve into the particulars.

[3] Beyond speaking with Wagner and contacting the Novi Police, Bautz did not speak with any other witness or employees before the November meetings in Boston.

could work at the same office with Wagner and he did not want to return to the Novi office. (Def. Br. Ex. C, First Request for Admissions at 30-31).

Plaintiff claims that during the meeting he was asked to withdraw the police report and stated that he would consider it. (Compl. ¶¶ 30-31). Defendant, however, denies any claim that it requested Plaintiff withdraw the report and contends that Plaintiff offered to withdraw the report of his own accord. (Bautz Dep. 101-02).

Plaintiff was suspended with pay at the conclusion of the meeting. (Compl. ¶ 32). Bautz authored a memorandum the same day, in which she summarized her reasons for suspending Plaintiff:

> First and foremost was Rick's request that he not have to go back to the office and work with Herb– this was his request. Also, I was very uncomfortable with Rick's constant references to his violent background – he mentioned these two incidences several time during our conversation.[4] I also was very uncomfortable with the fact that Rick had to restrain himself from going to Herb's house on the evening of 10/26 and confronting him. I was concerned for the safety and security of the people in the Novi office.

(Bautz 11/3/05 Memo at 4).

### D. Termination

After Plaintiff's suspension, Bautz spoke with the one witness to the incident, Bartoshesky. (Bautz Dep. 107). Bartoshesky related that he had witnessed the incident and he had seen that Wagner "grabbed [Plaintiff's] throat". (Plf. Br. Ex. 15, Steir Notes 11/8/05 Bartoshesky Phone Conv.). Bartoshesky also related that Plaintiff called him that night and told him that Wagner had touched him before. (*Id*.). Bartoshesky also observed that he had never seen Plaintiff aggressive

---

[4] Plaintiff only made one reference to a violent past, the "bar room brawl" when he was 19 years old. It is unclear what other reference Bautz is alluding to in her summary. (Bautz 11/3/05 Memo).

5

or violent towards anyone. (*Id.*).

On November 8, 2005, Bautz also spoke with Plaintiff's co-worker Mark Pilbeam ("Pilbeam"); he did not add anything to Plaintiff's alleged violent past although he thought Plaintiff was "paranoid". (Bautz Dep. 108; Plf. Br. Ex. 16, Steir Notes 11/8/05 Pilbeam Phone Conv.). On the other hand, Pilbeam did note that he had "felt threatened by" Wagner and that he believed Wagner could be "bi-polar." (Steir Notes 11/8/05 Pilbeam Phone Conv.).

Plaintiff was terminated on November 17, 2005. (Compl. ¶ 33). Patricia Bautz and Michael Steir were the two decision makers involved in the termination decision. (Bautz Dep. 115).

Defendant asserts Plaintiff was terminated for the following reasons:

1. Plaintiff was a divisive force in the Novi office and to general business operations;
2. Plaintiff stated he could no longer work for Wagner and refused to transfer locations;
3. Plaintiff "lied to the Novi police" about his interactions with Defendant's Human Resource Department;[5]
4. Defendant was concerned for the safety of its workers, especially Wagner, given Plaintiff's violent past history;
5. Plaintiff distracted coworkers by speaking of his personal life;
6. Plaintiff failed to improve his work performance after the June 2005 e-mail from Wagner.

(Def. Br. Ex. M, Ans. to Interrogatories, No. 2).

## II. ANALYSIS

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b).

---

[5] Plaintiff stated to the police that he was not pleased with the way Defendant was handling the issue, yet alleged admitted during the 11/3/05 meeting that he had told Bautz not to act on his complaints. (Buatz 11/3/05 Notes).

6

Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or

denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### B. Michigan's Whistleblower Protection Act

The Michigan Supreme Court has explained that Michigan's Whistleblower Protection Act ("WPA"), "as interpreted, [] provides protection to employees who report violations of law by either their employers or fellow employees. The act was intended to protect employees who alert the public to 'corruption or criminally irresponsible behavior in the conduct of government or large businesses." *Dolan v. Continental Airlines/Continental Express*, 454 Mich. 373, 381 (1997) (citation omitted).

> The WPA states:
>
> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mich. Comp. Laws § 15.362

To establish a prima facie case of an unlawful discharge pursuant to the WPA, Plaintiff must evidence that: "(1) he was engaged in protected activity as defined by the act, (2) the defendant discharged him, and (3) a causal connection exists between the protected activity and the discharge."

*Trepanier v. National Amusements, Inc.*, 250 Mich. App. 578, 583 (2002) (citation omitted).

Protected activity under the statute consists of: (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation. *Roulston v. Tendercare, Inc.*, 239 Mich. App. 270, 279 (2000).

The Michigan Court of Appeals has held that "the WPA bears substantial similarities to Michigan civil rights statutes and that actions under the WPA are analyzed using the 'shifting burdens' framework utilized in retaliatory discharge actions under the Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.*" *Roulston*, 239 Mich. App. at 281. Therefore, a plaintiff must first establish a prima facie case of retaliatory discharge. *Hopkins v. Midland*, 158 Mich. App. 361, 378 (1987). If this burden is met, then the burden shifts to the defendant to "articulate a legitimate business reason for the discharge. If the defendant produces evidence establishing the existence of a legitimate reason for the discharge, the plaintiff must have an opportunity to prove the legitimate reason offered . . . . was only a pretext for the discharge." *Roulston*, 239 Mich. App. at 281 (citation omitted).

### A. Causal Connection and Matter of Public Concern

Defendant argues summary judgment is appropriate because Plaintiff cannot establish a prima facie case of retaliatory discharge under the WPA. It is undisputed that Plaintiff was engaged in protected activity when he made the October 27, 2005 police report alleging assault against Wagner and Defendant subsequently terminated his employment. However, Defendant contends that Plaintiff's claim fails because: (1) there is no evidence of a causal connection between these two acts; and (2) Plaintiff's primary motivation for reporting the assault was not out of concern for the public.

The Michigan Supreme Court has made clear that to establish a causal connection, a plaintiff "must show something more than merely a coincidence in time between protected activity and adverse employment action." *West v. General Motors Corp.*, 469 Mich. 177, 186 (2003). Further, to succeed on a WPA claim, "the primary motivation of an employee pursuing a whistleblower claim 'must be a desire to inform the public on matters of public concern, and not personal vindictiveness.'" *Shallal v. Catholic Social Serv. of Wayne County*, 455 Mich. 604, 621 (1997) (internal citation omitted). Without this motivation, the plaintiff would be unable to "establish the causal connection between his actions and her firing." *Id*.

Defendant argues that similar to plaintiff in the *West* case, Plaintiff cannot show a causal connection where it did not evidence an adverse reaction to Plaintiff's filing the police report. In *West*, a plaintiff alleged a a violation of the WPA when he was fired after he filed a police report against a coworker alleging assault. *West*, 469 Mich. at 181. The Michigan Supreme Court held that the plaintiff failed to set forth a causal connection under the WPA when he merely alleged that he had advised his supervisors that he reported the alleged assault to the police and was subsequently discharged. *Id*. at 184. The court found that the plaintiff could not show "his employer took adverse employment action *because of* plaintiff's protected activity. . . ." *Id*. at 185 (emphasis in original). The *West* court went on to note that there was no evidence that the supervisors who were notified by plaintiff that he had filed the report gave it "a second thought" and more importantly, there was no evidence that those supervisors were involved in any way with the decision to terminate the plaintiff's employment. *Id*.

In the instant case, Plaintiff's termination followed closely from his filing a police report against his supervisor Wagner. Plaintiff was placed on paid suspension seven days after he filed the police report and immediately after his "interview" with Bautz and Steir regarding the incident.

Plaintiff was terminated two weeks later without having been reinstated. Unlike *West*, where there was no evidence that the supervisors who were aware of the police report took part in the decision to discharge, in the present case, the two decision makers, Bautz and Steir, were both aware of the police report. Further, rather than "nonchalance" as was seen by the actions of the supervisors in *West*, Bautz immediately began an "investigation" into the incident which, from the record, only involved requesting the alleged aggressor to relate any "similar" incidents involving Plaintiff prior to interviewing both him and Plaintiff.

To the extent that Defendant argues that summary judgment is appropriate because Plaintiff's motivation for reporting the alleged assault was not out of public concern, the Court rejects this argument. Defendant points to the fact that Plaintiff did not immediately attempt to press charges against Wagner, Plaintiff believed that Wagner was trying to get him fired, and Pilbeam had stated that Plaintiff was seeking a severance package from Defendant in September of 2005 as evidence of an ulterior motive. (*See* Bautz Aff. at 49-50; Ex. A-20, Bautz 11/8/05 Pilbeam Notes).

However, viewing the record in a light most favorable to the Plaintiff, there remain genuine issues of material fact regarding Plaintiff's motivation in reporting the incident. Most obvious is the factual distinction between those cases in which Michigan courts have found bad faith and precluded recovery and the instant case: a conditional threat to report. In *Shallal*, the court held that the employee's primary motivation was not altruistic because she conditioned her threat of reporting upon her further employment. " *Shallal*, 455 Mich. at 622. Here, Plaintiff had not been subject to any notification of his impending termination, nor had he been recently reprimanded for his performance. *See Robinson v. Radian*, No. 07-10421, Slip. Co. 2008 WL 1882661 * 13-14 (E.D. Mich. Apr. 24, 2008) (Cox, J.) (finding no causal connection when a plaintiff had been subject to job performance criticism two days before he made a conditional threat to report). Therefore,

although Plaintiff appeared to be worried that Wagner was attempting to get him discharged, this fact alone, without a conditional threat, does not support a finding that Plaintiff's primary motivation for reporting the alleged assault was to insure his continued employment.

For these reasons, the Court finds that Plaintiff has set forth a prima facie case of retaliation under the WPA. Although Defendant argues that temporal proximity alone is not enough to show a causal connection, Plaintiff has set forth evidence of other facts, that viewed in a light most favorable to Plaintiff, evidence a causal connection between his protected activity and his termination. Further, genuine issues of material act remain regarding his motivation for reporting the alleged assault such that summary judgment is inappropriate.

### B. Legitimate Non-Retaliatory Reasons for Discharge and Pretext

Defendants argue that even if Plaintiff can set forth a prima facie case of retaliatory discharge under the WPA, summary judgment is appropriate because Plaintiff cannot show that their legitimate, non-retaliatory reasons for discharge are pretext. Defendant contends that Plaintiff can only succeed in alleging that Defendant failed to make a "perfect investigation" and this is insufficient to evidence pretext. *See Elie v. Health Care and Retirement Corp. of Am.*, No. 05-73071, 2007 WL 781890 *7 (Mar. 13, 2007) (Edmunds, J.) (unpublished) (holding a plaintiff could not show pretext when "[a]t best, Plaintiff's arguments on this point indicate that Defendant did not conduct a perfect investigation . . . .).

"[An] employee may meet the burden of showing pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Hopkins*, 158 Mich. App. at 378 (1987) (internal citation omitted).

12

As stated previously, Defendant alleges it terminated Plaintiff's employment for the following reasons:

1. Plaintiff was a divisive force in the Novi office and to general business operations;
2. Plaintiff stated he could no longer work for Wagner and refused to transfer locations;
3. Plaintiff "lied to the Novi police" about his interactions with Defendant's Human Resource Department;[6]
4. Defendant was concerned for the safety of its workers, especially Wagner, given Plaintiff's violent past history;
5. Plaintiff distracted coworkers by speaking of his personal life;
6. Plaintiff failed to improve his work performance after the June 2005 e-mail from Wagner.

After careful review, the Court finds that Plaintiff has met his burden in showing that genuine issues of material fact remain regarding whether Defendant's reasons for discharge are pretext.

Defendant allegation that Plaintiff distracted his coworkers with his personal life and his work performance was sub par is not supported by the record. Although Plaintiff's performance evaluation from 2004 notes that he distracts coworkers with his personal life, his most recent 2005 review omits any comment regarding that behavior. Viewing this in a light most favorable to Plaintiff, this leads to the conclusion that the behavior was no longer an issue.

To the extent Defendant argues that Plaintiff's work was unacceptable, Defendant points to an email Wagner sent Plaintiff instructing on areas of improvement. However, Plaintiff was not technically put on a "performance improvement plan," nor is there any indication from the record

---

[6] Plaintiff stated to the police that he was not pleased with the way Defendant was handling the issue, yet alleged admitted during the 11/3/05 meeting that he had told Bautz not to act on his complaints. (Buatz 11/3/05 Notes).

that Plaintiff had further meetings with Wagner regarding his work product after June 2005.[7] (Def. Br. Ex. B, Wagner Dep. 75). Bautz admits that she had never heard of any performance problems concerning Plaintiff until after the October 26, 2005 incident. (Bautz Dep. 126). The importance of this email is further undercut by the fact that Plaintiff had recently been nominated and received a prestigious award for his work product in February 2005.[8] Moreover, Wagner states in his deposition that prior to the incident of October 27, 2005, there had been no discussions regarding the termination of Plaintiff, indeed, "on the contrary[, t]he discussions were how we didn't want to terminate him. . . ." (Ex. B, Wagner Dep. at 117: 13-14). Both co-workers that Bautz interviewed after Plaintiff's suspension and before his termination stated that they believed that Plaintiff was an above-average worker.

To the extent that Defendant alleges Plaintiff was fired because of safety concerns regarding Wagner and other employees, the first time Bautz had heard any allegation of Plaintiff having a "violent" history was in Wagner's October 28, 2005 email. (Bautz Dep. 91). This email was sent in response to Bautz request that Wagner supply her with any "similar" incidents involving Plaintiff and in connection with Plaintiff's filing a police report. (Wagner 10/28/05 Email). Bautz testified that because Plaintiff had so much history "stirring the pot," she did not trust him "as far as [she] could throw him" and therefore requested information about Plaintiff from Wagner immediately after the October 26, 2005 incident. (Bautz Dep. 94:25-95:2). Indeed, requesting this information

---

[7] Wagner testified that he did not confer with Human Resources about what steps to take before putting someone on a performance improvement plan, but he did review the guidelines, however, decided to pursue something that "would be a step short of putting Rick on a formal performance improvement plan." (Wagner Dep. at 75:12-15).

[8] Interestingly, it was Wagner who nominated Plaintiff for the award despite his later allegations that Plaintiff's work was slipping.

14

was the only "investigative" step Defendant took before speaking with Wagner and Plaintiff about the alleged assault a week later. Bautz explained that she requested the information from Wagner because she "was looking for other incidents where Wiltsie may have engaged in inappropriate conduct with others in the office." (*Id*. at 94:14-16).

It is also clear from the record that although Plaintiff stated he contemplated "confronting" Wagner after the incident, he never did. Defendant does not allege that Plaintiff threatened violence. Indeed, viewing the facts in the light most favorable to Plaintiff, he testified he explained his past violent behavior as the reason he avoided physical contact with anyone. (Wiltsie Dep. 395). Moreover, Bautz testified that outside of Wagner, no other person at any other time came to her and reported that Plaintiff had threatened them or engaged in a violent act.[9] (Bautz Dep. 92).

After review, the Court finds that Plaintiff's argument is not based upon the fact that Defendant conducted a flawed investigation, but that an investigation which resulted in Plaintiff's termination was started *because* Plaintiff filed a police report which is protected conduct under the WPA. It is clear from the record that Defendant's first step in investigating an alleged assault upon Plaintiff was to question the alleged aggressor about Plaintiff's violent tendencies or other misconduct in the office. Further, Plaintiff's virtually unblemished performance record does not

---

[9] Defendant also alleges that Plaintiff was discharged because he lied to police about Human Resources handling of the incident. This claim does not appear credible as it appears from the record that Wagner may have also misstated the facts in his interview with the police, where he alleged Plaintiff was put on a "performance improvement plan" and angry about that fact. (Police Report at 4). Bautz testified that she did not know of any improvement plan, nor had she heard Plaintiff complain of being put on an improvement plan. Further, Wagner stated in his interview with Bautz and Steir that he had not grabbed Plaintiff by the neck but rather by the shoulders; this account of the facts is contradicted by his own statement to the police, Plaintiff's account, and Bartoshesky's statement. (Plf Br. Ex. 14, Bautz Notes 11/3/05 Wagner Meeting, Police Report at 2-3, 5). Wagner received no punishment or reprimand for his apparent misstatements.

15

lend credence to Defendant's allegations of Plaintiff's sub par work product. Finally, Defendant has failed to show that Plaintiff threatened violence against any employee or Wagner or that he had a violent history at the Novi office. Therefore, there remain genuine issues of material fact appropriate for jury determination.

### III. CONCLUSION

For these reasons, the Court DENIES Defendant's Motion for Summary Judgment.

**SO ORDERED.**

                                        s/Paul D. Borman
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated: July 14, 2008

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 14, 2008.

                                        s/Denise Goodine
                                        Case Manager