**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RICHARD WILTSIE,

        Plaintiff,                           CASE NO. 05-CV-74746

vs.                                                PAUL D. BORMAN
                                                  UNITED STATES DISTRICT JUDGE

COGNEX CORPORATION,

        Defendant.
_____/

**OPINION AND ORDER:
(1) GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION IN LIMINE AND
(2) GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION IN LIMINE**

Now before the Court is Defendant Cognex Corporation's ("Defendant") September 12, 2008 Motions in Limine (Dkt. No. 73, 74) and Plaintiff's September 19, 2008 Motion in Limine. (Dkt. No. 75). The Court held a hearing on these matters on October 23, 2008. Trial is scheduled for November 12, 2008.

For the following reasons and those explained from the bench, the Court GRANTS IN PART and DENIES IN PART Defendant's Motions in Limine and GRANTS IN PART and DENIES IN PART Plaintiff's Motion in Limine.

**I.    BACKGROUND**

This case arises from Plaintiff's allegations that Defendant terminated his employment after he filed a police report against a co-worker, Herb Wagner ("Wagner"), for assault. In February 2003, Defendant hired Plaintiff to work in its Novi, Michigan office as an automotive sales manager.

1

(Pl.'s Compl. ¶ 6). During the pertinent time period, Plaintiff's supervisor was Wagner. (*Id.* ¶ 8).

Plaintiff contends that on October 26, 2005, he was assaulted by Wagner after Plaintiff sent an email at Wagner's direction. Plaintiff alleges he was sitting at his workstation speaking with co-worker Thomas Bartoshesky ("Bartoshesky") when Wagner placed his hands around Plaintiff's neck and shook him stating, "of all the times you chose to do something I ask you to do, this time you do it quickly." (Compl. ¶ 23). Plaintiff claims that he perceived Wagner as angry and Plaintiff responded to the incident by asking "what the hell he was doing." It is undisputed that after the incident Plaintiff, Wagner, and Bartoshesky went into Wagner's office and continued to talk about a business issue.

After the incident, Plaintiff attempted to contact Patricia Bautz ("Bautz"), Vice President of Employee Corporate Services for Defendant, on October 27, 2005, but she failed to respond because she was out of town. Later that day, Plaintiff filed a police report with the Novi Police Department.

Bautz began an investigation into the incident on October 27, 2005. As part of her investigation she called Wagner and asked him to describe any other similar events involving Plaintiff. (Def.'s Resp. Ex. D, Wagner 10/28/05 Email).

On November 3, 2005, Plaintiff attended a meeting in Boston with Bautz and Michael Steir, Defendant's Vice President of Corporate Legal Services. On behalf of Defendant, Bautz and Steir. suspended Plaintiff with pay at the conclusion of the meeting. (Compl. ¶ 32). Bautz authored a memorandum the same day, in which she summarized her reasons for suspending Plaintiff:

> First and foremost was Rick's request that he not have to go back to the office and work with Herb– this was his request. Also, I was very uncomfortable with Rick's constant references to his violent background – he mentioned these two incidences several time during our conversation. I also was very uncomfortable with the fact that Rick had to restrain himself from going to Herb's house on the evening of 10/26

2

and confronting him. I was concerned for the safety and security of the people in the Novi office.

(Doc. 73 Ex. H, Bautz Memo at 5).

Plaintiff was terminated on November 17, 2005. (Compl. ¶ 33). Bautz and Steir were the two sole decision makers involved in the termination decision. Defendant asserts Plaintiff was terminated for the following reasons:

1. Plaintiff was a divisive force in the Novi office and to general business operations;
2. Plaintiff stated he could no longer work for Wagner and refused to transfer locations;
3. Plaintiff "lied to the Novi police" about his interactions with Defendant's Human Resource Department;
4. Defendant was concerned for the safety of its workers, especially Wagner, given Plaintiff's violent past history;
5. Plaintiff distracted coworkers by speaking of his personal life;
6. Plaintiff failed to improve his work performance after the June 2005 e-mail from Wagner.

(Doc. 56, Ex. M, Ans. to Interrogatories, No. 2).

December 14, 2005, Plaintiff filed this case alleging four separate causes of action. Plaintiff subsequently stipulated to the dismissal of three of the claims, leaving only the Michigan Whistleblower Protection Act ("WPA") claim, as Plaintiff's sole cause of action.

## II. Legal Standard

The Court exercises discretion when resolving questions of relevancy and admissibility of evidence at trial. *See United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1992). Generally, evidentiary determinations depend largely upon the Court's assessment of the relevance of proffered evidence as well as the extent that any prejudice is created by its admission.

Relevant evidence is defined in Federal Rule of Evidence 401, as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. "Evidence that is not relevant

is not admissible." FED. R. EVID. 402. Under Federal Rule of Evidence 403, a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

## III. Defendant's Motions in Limine

At the onset, it is important to note that at the hearing on these matters, the Court determined that the trial would be bifurcated as to liability and damages. Defendant made an objection on the record as to the Court's decision to bifurcate, and the Court noted Defendant's objection.

### A. Plaintiff's Loss Summary and Testimony Regarding Certain Related Damages Evidence

Defendant argues that Plaintiff's Economic Loss Summary Through 2008 ("Loss Summary") dated August 8, 2008 is inadmissible under Rules 401, 402, 403 and 1006. The Loss Summary is eighteen pages long. (Doc. No. 74 Ex. A). The first two pages consist of a title page and a table of contents. (*Id.*). Pages three through five contain several charts purporting to summarize damages for which Plaintiff is eligible in this case. (*Id.*). Pages six through twelve consist of annual tax forms received by Plaintiff in connection with his employment by Defendant and his current employer, Stamotech Corporation ("Stamotech"). (*Id.*). The last six pages of the Loss Summary, pages thirteen through eighteen, constitute various "Earnings Statements" relating to Plaintiff's employment with Stamotech in 2008. (*Id.*).

Defendant further argues that the Court should exclude certain testimony from Plaintiff regarding the following alleged purported damages: (i) "unpaid expenses," which Plaintiff admits are "estimated" and for which Plaintiff has provided no evidence; (ii) "401K Match Loss"; (iii) calculation of back pay and/or front pay using an assumption of a six-percent annual raise from

Defendant from the date of termination forward; and (iv) the calculation of "projected stock options," which includes an assumption of a six-percent increase available for exercise and/or value of the options.

At the hearing, Plaintiff indicated that the Loss Summary was not to be used as an evidentiary exhibit but instead used as a demonstrative device. In light of this, Defendant withdrew its motion.

Accordingly, to the extent that Defendant's motion seeks to exclude the Loss Summary from evidence at trial, the Court GRANTS the motion. But to the extent that Defendant's motion asks the Court to preclude testimony discussing issues contained within the Loss Summary, the Court DENIES the motion as moot at this point in time.

### B. Evidence Concerning Damages Accrued Post–May 5, 2006 and the Possibility of Reinstatement

As mentioned above, Plaintiff's sole remaining cause of action is his claim under the Michigan Whistleblower Protection Act. Remedies under the WPA generally include reinstatement, lost wages, and other actual damages. *See* MICH. COMP. LAWS. 15.364 (2008). Defendant argues, however, that the after-acquired evidence doctrine applies here, thereby limiting Plaintiff's damages and precluding reinstatement as a remedy.

Under the after-acquired evidence doctrine, an employee seeking damages or reinstatement against his employer for unlawful discharge is precluded from recovering front pay and reinstatement if the employer can establish that it would have lawfully terminated the employee at some specific time after the challenged termination for misconduct discovered after the challenged termination. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361–63, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996).

"Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362–363.

According to Defendant, through the May 5, 2006 deposition testimony of Mark Pilbeam, a former co-worker of Plaintiff, Defendant discovered that Plaintiff was dismissed by a prior employer, Visteon, because he had "bought a black powder rifle," "made threats about his ex-wife," and visited websites on his work computer "on learning how to make bombs." (Doc. No. 73, Ex. A Pilbeam Dep. 51:6–8, 58:9–15). Until this time, Defendant was unaware of the actual circumstances regarding Plaintiff's termination from Visteon because on his signed employment application with Defendant, Plaintiff stated that the reason for his separation from Aerotek (Visteon) was "contract job temporary." (Doc. No. 73, Ex. B.1 at 2).

After discovering, through Pilbeam, the circumstances of Plaintiff's termination from Visteon, Defendant deposed Viola Wilson, a salaried personnel supervisor at the Visteon plant where Plaintiff had worked as a contract employee. (Doc. No. 73, Ex. C 10:8–10, 11:17). According to Wilson, immediately after Visteon's IT department discovered Plaintiff had downloaded a document entitled the "Anarchist Handbook" on his computer and had "made references to his wife," she conducted a meeting with Plaintiff and the human resources director for Aerotek—the agency that Visteon contracted with to employ Plaintiff. (*Id.* 15:20–25, 16:1–8). At that meeting, Plaintiff told Wilson and the human director for Aerotek that "he wanted to hurt his wife." (Id. 36:20–37:5–13). At the conclusion of the meeting, the Aerotek human resources director informed Plaintiff that his contract placement at Visteon was terminated. (*Id.* 17:3–17). Because

6

of her concern for Plaintiff's wife and at the instruction of her supervisor, Wilson contacted the Farmington Hills Police and told them about the incident. (*Id.* 25:15–26:3).

Defendant asks this Court to find as a matter of law that upon learning of the circumstances surrounding Plaintiff's termination from Visteon, it would have terminated Plaintiff. In support of its argument, Defendant offers an affidavit from Bautz in which she states that had Plaintiff still been employed by Defendant on May 5, 2006, the day it learned of Plaintiff's conduct at Visteon, it would have terminated his employment immediately. (Doc. 73, Ex. B. Bautz Aff. ¶ 5).

The Court finds Defendant's motion in limine procedurally improper because it asks the court to weigh the sufficiency of the evidence in support of its after-acquired evidence defense. Instead, the appropriate vehicle for such a request would have been a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, with its accompanying and crucial procedural safeguards. *Provident Life & Acc. Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. 1997 ("If [Defendant] wanted to preclude [Plaintiff] from raising these defenses at trial because there was no genuine issue of material fact as to them, then [Defendant] should not have filed a motion in limine on the eve of trial, but should instead have filed a summary judgment motion. . . ."); *see also Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 870 (E.D. Mich. 2007). Thus, to clarify, "[u]nlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion in limine is designed to narrow the evidence issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).

The deadline for filing dispositive motions in this case was originally set for November 15, 2006 and subsequently pushed back four different times, with a final deadline of February 14, 2008.

7

Defendant's present motion in limine was filed on September 12, 2008. While Defendant did file a motion for summary judgment on the date of dispositive motion cut-off, its motion did not address the after-acquired evidence defense. Defendant cannot now utilize a motion in limine to achieve what it failed to do in its motion for summary judgment.

Accordingly, to the extent that Defendant's motion in limine asks the Court to find, as a matter of law, that Defendant would have terminated Plaintiff on May 5, 2006 upon discovering the circumstances of his termination from Visteon, the Court DENIES the motion. Defendant, however, will be permitted to make this argument at trial.

### IV. Plaintiff's Motion in Limine

Plaintiff argues that the Court should exclude the following evidence from trial: "(1) Prior and subsequent (post-employment) "bad acts" and character evidence pursuant to Rules 403 and 404; (2) Evidence withheld from Plaintiff during discovery on the grounds of attorney-client privilege and the work-product doctrine; and (3) "After-acquired" evidence." (Pl.'s Br. 1).

#### A. Prior and Subsequent (Post-Employment) "Bad Acts" and Character Evidence

##### 1. Prior "Bad Acts" and Character Evidence

Plaintiff argues that the Court should exclude proposed exhibits 538 through 567 in the Joint Final Pretrial Order (Doc. No. 91) as well as preclude any mention of these exhibits at trial. On October 30, Defendant withdrew exhibits 538 through 567. Accordingly, Plaintiff's argument on this issue is moot.

In addition, Plaintiff argues that any correspondence, including telephone conversations and e-mails, between Defendant's employees and a private investigator hired by Defendant to unearth the details of Plaintiff's past should also be excluded ("Domestic Violence Evidence"). According

to Bautz's deposition testimony, during the course of Defendant's investigation but prior to Plaintiff's termination, a private investigator hired by Defendant informed Bautz of "domestic violence charges" involving Plaintiff and his ex-wife. (Def.'s Resp. 113:13–115:5). Furthermore, Steir testified that one of the reasons Plaintiff was terminated was because "[h]is wife took out a restraining order on him." (Def.'s Reply, Ex. B Steir Dep. 73:6–12, 77:16–17).

Under Federal Rule of Evidence 404, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." But evidence of other crimes, wrongs, or acts may be admissible

> for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b). Therefore, Rule 404 does not completely bar evidence of prior bad acts.

The Sixth Circuit applies a three-step process to determine the admissibility of other acts evidence under Rule 404(b): first, "whether there is sufficient evidence that the other act in question actually occurred; second, "whether the evidence of the other act is 'probative of a material issue other than character'"; and third "whether the 'probative value of the evidence is substantially outweighed by its potential prejudicial effect.'" *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002) (citations omitted).

"Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Id.* (citation omitted).

9

Applying the foregoing standard, Plaintiff argues that the Domestic Violence Evidence fails the second and third parts of the admissibility test—specifically that it is not probative of a material issue other than character and that it fails the Rule 403 balancing test. Plaintiff further argues that this evidence is not being offered for an admissible purpose because (1) it constitutes inadmissible hearsay and (2) Defendant cannot testify as to information that it has asserted attorney-client privilege.

As Defendant notes, the Domestic Violence Evidence is not hearsay because it is not being offered to prove the truth of the matter asserted. Rather, it is being offered to show Defendant's state of mind in reaction to the statements made by Wagner and the private investigator. Namely, Defendant seeks admission of the testimony to prove that it terminated Defendant at least in part because of what it found out about Defendant's issues with domestic violence in the past.

Plaintiff also asks the Court to preclude Defendant from relying on information uncovered by the private investigator and allegedly provided to Bautz because Defendant—citing attorney-client and work product privilege—has refused to disclose details of that investigation. According to Defendant, however, the only document from the private investigator withheld by Defendant is an e-mail sent from Allen Applebaum to Bautz on November 16, 2008, identified on Defendant's privilege log as document #21.

At the hearing, Defendant's counsel agreed to turn over document #21 to Plaintiff. On October 30, 2008, Defendant turned over this document. Accordingly, Plaintiff's argument on this issue is moot.

Therefore, the Court finds that the Domestic Violence Evidence, which had been provided to Bautz before she terminated Plaintiff, is being offered for an admissible purpose. Also, because

that evidence goes directly to one of the main issues of this case—what Defendant knew at the time of Plaintiff's termination—it satisfies the other two requirements for establishing that it is probative of a material issue other than character.

While the evidence may be prejudicial to Plaintiff, this prejudicial effect does not substantially outweigh its probative value. As indicated above, the evidence involves one of the primary issues in dispute. In addition, the Court will provide a proper limiting instruction to the jury to deal with the issue of prejudicial impact.

Therefore, to the extent the Plaintiff seeks to exclude the Domestic Violence Evidence, which had been provided to Bautz before she terminated Plaintiff, the Court finds the evidence admissible.

### 2. Subsequent "Bad Acts"

Plaintiff also asks the Court to prohibit Defendant from presenting evidence at trial of misconduct committed by Plaintiff subsequent to his termination by Defendant because the presentation of such evidence would be in violation of Rules 403 and 404. According to Defendant, it is not presently aware of any such evidence and is only seeking documents relating to Plaintiff's compensation from Stamotech from the last date of production through the date of trial. At the hearing, the parties stipulated that if anything comes to light regarding any subsequent acts of misconduct by Plaintiff, the parties will raise the issue with the Court before attempting to introduce any such evidence.

Therefore, to the extent that Plaintiff ask the Court to preclude Defendant from presenting evidence of any subsequent acts of misconduct by Plaintiff after he was terminated by Defendant, the Court DENIES Plaintiff's motion.

B.  **Defendant's "After-Acquired Evidence**"

Lastly, Plaintiff argues that any information that was not available or known by Defendant at the time of the challenged decision cannot be relied upon by the Defendant to establish a legitimate non-discriminatory justification for Plaintiff's termination. Under this section, however, Plaintiff appears to be arguing that Defendant cannot rely upon evidence that it acquired after Defendant *suspended* Plaintiff, but before he was terminated.

The Court finds that there is no basis for precluding Defendant from introducing information that it discovered *before* November 17, 2005—the date that Plaintiff was terminated. Plaintiff's entire cause of action is based on his termination from Defendant. As such, Defendant should be allowed to introduce evidence that it acquired before that termination date.

Accordingly, the Court DENIES Plaintiff's motion to the extent that it seeks exclusion of "after-acquired evidence"—information obtained prior to Plaintiff's termination on November 17, 20005.

IV.  **CONCLUSION**

For these reasons, the Court:

(1)  **GRANTS IN PART AND DENIES IN PART** Defendant's Motions in Limine;

(2)  **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion in Limine.

**SO ORDERED**.

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: November 3, 2008

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 3, 2008.

                                           s/Denise Goodine
                                           Case Manager